■ ROBERT GIORDANO, Respondent, v MURRAY N. FRIEDMAN et al., Defendants, and MICHAEL FEINSTEIN et al., Appellants. — In a medical malpractice action, defendants Feinstein and Levy appeal from so much of an order of the Supreme Court, Nassau County (Kelly, J.), dated June 12, 1981, as granted plaintiff's motion for leave to serve an amended complaint and bill of particulars. Order affirmed insofar as appealed from, without costs or disbursements. No opinion. Hopkins, J. P., Lazer and Cohalan, JJ., concur.

O'Connor, J., dissents and votes to reverse the order insofar as appealed from, and deny plaintiff's motion, with the following memorandum: Plaintiff, then age 26, served his medical malpractice complaint on appellants, a hematologist and an anesthesiologist, respectively, and the other defendants in May, 1976. Issue was joined in June and July, 1976. The complaint merely alleged that the medical care rendered plaintiff had been "fraught" with defendants' malpractice, but his bill of particulars, served December 28, 1976, and supplemented March 1, 1977, specified that defendants had allegedly misdiagnosed plaintiff's condition as a malignant lymphonoma and had subse-

quently performed an unnecessary splenectomy and lymphectomy on October 22, 1974. Examinations before trial were conducted in May, 1977 and the case was first placed on the Ready Day Calendar for trial on September 22, 1980 after a note of issue was filed in October, 1977. Trial was held April 3 through 20, 1981. Admitted in evidence was a finding of no liability by a medical malpractice panel and a consent form filled in by the surgeon who performed the operation. The form, signed by plaintiff and witnessed, acknowledged plaintiff's consent to exploratory surgery, removal of his spleen and biopsy of his liver and "lymph node". The record of operation showed that the pre-operation diagnosis was Hodgkins' disease and that the surgeon removed a thrice-normal sized spleen and biopsied enlarged and matted nodes in the iliac artery, aorta and vena cava. During trial the action against this surgeon was discontinued. Trial Term denied plaintiff's request to charge the jury upon a theory of lack of informed consent because it had not been pleaded; there is no allegation in the record that the plaintiff moved, properly or not, to conform his pleadings to the proof pursuant to CPLR 3025 (subd [c]). The trial ended in a hung jury. By order to show cause returnable May 26, 1981, plaintiff sought leave pursuant to CPLR 3025 (subd [b]) to serve an amended complaint and bill of particulars. The proposed pleading added the informed consent theory to the original misdiagnosis theory. Plaintiff offered no excuse for his delay in failing to plead this theory nearly five years earlier when the action was initiated, but argued that, in preparation for retrial, he was responding to Trial Term's overruling his request to charge. Plaintiff, however, submitted an affidavit of merit in which he alleged not only that he had never been informed of his true condition and that this ignorance had tortured him to this very day, but also that he had never been told that the surgical procedure was for diagnostic purposes only and that he was likewise never told about the risks of the reduced immunity to disease he would suffer after loss of his spleen. Appellants opposed the application on the ground of surprise and prejudice in that the only facts investigated during the years this case pended had been those relevant to the misdiagnosis, not to lack of informed consent. Special Term granted plaintiff's motion for leave to amend, but directed discovery and a medical malpractice panel determination "solely with respect to the new and additional theory of liability now pleaded." The order insofar as appealed from should be reversed and the motion denied. Contrary to plaintiff's assertions, his belated framing of his action in terms of lack of informed consent is patently prejudicial to appellants. This is because his misdiagnosis theory is but one type of an uninformed consent cause, and plaintiff is not content with merely clothing his original theory in new semantic garb. By definition plaintiff could not knowingly have consented to a surgical procedure predi-cated on a misdiagnosis. Recasting the misdiagnosis theory in terms of uninformed consent neither adds to nor detracts from the necessary elements of proof for plaintiff's original cause of action — although it might succeed in confusing a jury. What plaintiff's affidavit discloses, however, is that he now seeks to place before a jury another, quite distinct type of informed consent theory, one unrelated to misdiagnosis. This new theory is defendants' failure to inform him of his long-term prognosis after a splenectomy — *without regard to the correctness of the diagnosis*. In other words, assuming plaintiff failed to show that the diagnosis had been incorrect, he would still be permitted to show that he might yet have refused his consent upon weighing the expressed risk of living with his condition without surgical intervention against the allegedly unrevealed risk of seriously weakening his defenses against infection through loss of his spleen. I conclude that granting plaintiff's motion to amend the complaint and bill of particulars was improper, given the prejudice caused

defendants by plaintiff's lengthy and unexcused delay in raising a new theory predicated in significant part on facts lying peculiarly within plaintiff's knowledge throughout the course of this litigation. (See *Bonfante v Hadar Homes,* 74 AD2d 887; *Trevithick v Abbott Labs.,* 72 AD2d 840, app dsmd 48 NY2d 1027; *Hird v General Motors Corp.,* 61 AD2d 832; *Gross & Co. v Damor Realty Corp.,* 60 AD2d 541; *Foster Co. v Terry Contr.,* 25 AD2d 721; see, also, *Forman v Davidson,* 74 AD2d 505; *Industrial Nat. Mtge. Co. v Shreve, Lamb & Harmon Assoc.,* 70 AD2d 774; *Crombie v Miller,* 14 AD2d 895.)